THEODORE MEYER, as Receiver of Farmers' Co-operative Creamery Company, a corporation, Appellant, v. Charles Hernett, Respondent.

(184 N. W. 619.)

**Corporations — in action by receiver against treasurer for accounting, evidence held to sustain judgment of dismissal.**

1. In an action for accounting, the evidence is examined, and held to sustain a judgment in favor of the defendant for a dismissal of the action.

Opinion filed Oct. 5, 1921.

From a judgment of the District Court of Logan County, *Graham,* J., plaintiff appeals.

Affirmed.

*S. E. Ellsworth,* for appellant.

"It is a prevailing doctrine of the American Courts, repeatedly asserted in the broadest terms, that the capital stock of a corporation is a trust fund to be used only in its interests and for corporate purposes, and more particularly that it is a trust fund for the security of creditors of the corporation, who presumably deal with it on the credit of its capital stock, so that it cannot be withdrawn or diverted to their prejudice." 14 Corpus Juris 383, § 505; In re L. M. Alleman Hardware Co. 172 Fed. 611; Thompson's Liability of Officers and Agents of Corporations, pp. 397-8.

"The capital stock of a corporation, both that which has actually been paid and that which remains unpaid, is regarded in the law as a trust fund pledged for the payment of the debts of the corporation." Adler v. Milwaukee Patent Brick Co. 13 Wis. 62; Gratz v. Redd, 4 B. Mon. (Ky.) 178, 196; Wood v. Drummer, 3 Mason 313; Compiled Laws 1913, §§ 7996 and 7997, Compiled Laws 1913.

"A creditor whose claim has not been reduced to judgment may maintain an action against an insolvent corporation on behalf of himself, and all other creditors to enforce stockholders' liabilities. Marshall-Wells Hardware Co. v. New Era Coal Co. 13 N. D. 396; 100 N. W. 1084.

*Cameron & Wattam,* for respondent.

The Receiver stands in the same position as the corporation of which he is Receiver would have stood as to all rights of action against debtors or alleged debtors except as to cases of fraudulent conveyance which are not involved in this case. Our Supreme Court has so held. Peoples National Bank of Dakota v. Francis, 8 N. D. 369.

A Receiver succeeds only to such title, right, and interest in the property as the person for whom he is appointed receiver had at the time of the appointment and which appointment does not affect pre-existing liens. Albien v. Smith (S. D.) 123 N. W. 675.

"The decided weight of authority sustains the rule in respect to the powers of receivers, where there is no enlargement of their powers by legislative enactment, that they have such rights of action only as were possessed by the persons or corporations upon whose estates they administer." 23 R. C. L. 116.

Directors of a corporation are liable to creditors only in case of fraud or deceit. 7 R. C. L. 501.

CHRISTIANSON, J. This is an action for an accounting. The complaint alleges:

"That at all times since September 8, 1911, the Farmers' Co-operative Creamery Company was a corporation organized and existing under and by virtue of the general laws of the state of North Dakota relating to corporations, having its principal place of business at Burnstad, Logan county, N. D., where it was engaged in the operation of a creamery belonging to it, and in the purchase of cream and the manufacture and sale of butter.

"That on or about the date of the organization of said corporation, the defendant, Charles Hernett, was appointed treasurer by its board of directors, and from that date until about October, 1915, continued to act as treasurer for said corporation, to collect, receive, and hold all funds and moneys belonging to said corporation, including subscriptions to the capital stock of the same and the income resulting from the operation of said creamery and the sale of its products."

The complaint further alleges:

"That on or about March 9, 1918, an action was commenced by the Attorney General for the dissolution of the said Farmers' Co-operative. Company, on the ground, among others, that it was insolvent; that in said action an order was made on May 14, 1918, appointing the above-named plaintiff as receiver of said corporation; that he qualified and entered upon the discharge of his duties as such receiver, and now is acting as such.

"That during the period from his appointment as treasurer of said Farmers' Co-operative Creamery Company about the 8th day of September, A. D. 1911, as aforesaid, until and after October, 1915, said defendant, Charles Hernett, in his capacity as treasurer of said corporation, received into his hands all moneys and funds belonging to said organization, in sums aggregating $10,000 or more; that during said period said defendant paid out upon the operating expenses of said creamery, and upon other accounts of indebtedness against said corporation, sums of money, the exact amount of which has not been disclosed to and is not known to this plaintiff; that said defendant has not at any time rendered to the board of directors of said corporation a true and correct account of the sums of money so received from him, or the sums disbursed by him; that from the best information procurable by plaintiff, from the accounts, papers, letters, and files of said corporation, there has been received by said defendant, as treasurer of funds and moneys belonging to said corporation, over and above all expenditure, a sum aggregating

more than $3,500, which balance has not been by said defendant paid over to said corporation or to this plaintiff as receiver of the same, and of which defendant upon demand of this plaintiff has failed and refused to render an account."

The plaintiff prays judgment as follows:

"(1) That said defendant, Charles Hernett, be required to account to this plaintiff for all sums received by him as treasurer of said corporation, the items of disbursement, of any sums regularly paid out by him as such treasurer, and the balance now remaining in his hands; (2) that upon said accounting judgment for the amount of any balance in the hands of said defendant of funds and moneys belonging to said corporation be entered in favor of this plaintiff as the receiver thereof; . (3) and such other and further relief as to the court may seem just and proper in the premises, and for plaintiff's costs and disbursements herein."

The answer of the defendant admits that the Farmers' Co-operative Creamery Company is a corporation as alleged; that an action was brought for its dissolution, and that the plaintiff was appointed receiver of said corporation, and now is such receiver. The answer admits:

"That on or about the date of organization of said corporation defendant was appointed treasurer of said corporation and continued to act as treasurer for said corporation except for a certain period in which C. P. Hoirup was appointed and acted as treasurer of said corporation."

The answer denies that the defendant has ever refused to render a correct and true account of the moneys received and disbursed by him as treasurer of said corporation, and avers that all moneys and funds received into his hands have been fully accounted for, and a report of the same rendered to the plaintiff, as receiver of said corporation. The answer further denies that the defendant has any moneys or funds belonging to said corporation in his possession, or that there is any balance whatsoever in his hands as treasurer of said corporation. The answer, also, avers:

"That during the time that the defendant acted as treasurer of said corporation, D. L. Anderson and H. A. Shepard each served as manager of said creamery, and in their capacity as manager paid salaries and other expenses, sold the product, and handled the receipts thereof, and the

defendant, acting as mere custodian of funds, had no check on the actual business transactions of said creamery."

The case was tried upon the issues framed by these pleadings. The trial court made findings and conclusions in favor of the defendant. Judgment was entered accordingly, and the plaintiff has appealed from the judgment and demanded a trial anew in this court.

The evidence shows that on or about July 3, 1911, a certain written contract was entered into between the Hastings Industrial Company of Chicago, Ill., as party of the first part and certain persons, some 46 in number, denominated as the subscribers, as parties of the second part, wherein the said Hastings Industrial Company agreed with the subscribers to construct and equip a gathered cream power butter factory at or near the town of Burnstad, in Logan county, in this state, for the sum of $4,000. Among others, the contract contained the following provisions:

"The contract is not binding unless the amount of $4,000 or more shall be subscribed, and it is understood that no subscriber is liable for a greater interest in said butter factory when same is completed than is represented by the amount of his or her individual subscription. Each subscriber agrees to pay the amount subscribed by him or her, to first party and no more.

"Payment as follows: 15 per cent. of the contract price when the foundation of the building is ready, and the material for building on ground; the balance 85 per cent. of the contract price, when the plant is completed.

"Subscriptions to this contract may be procured to any amount, and for this purpose one or more forms of this agreement may be circulated, and at any time after the subscriptions on all forms so circulated shall equal or exceed the said purchase price of said butter factory, it may be closed by the first party's special agent signing the same, and such forms shall be attached and taken together, and shall constitute the sole contract between the parties.

"First party shall have the right first to collect from said subscriptions or notes, as the entire amount due under this contract, but all money, notes, or subscriptions remaining after first party has been fully paid is the property of second parties.

"Second parties agree to appoint an executive committee of three when this contract is closed with full power and authority in a majority

to represent them in all of their interests herein, and from time to time inspect the work of first party while it is building said butter factory and placing said machinery."

"For the purpose to form a corporation to own and operate said butter factory and fully carry out the intention of subscribers, it is hereby agreed that when this contract is closed, second parties are to incorporate in a limited corporation organized under the laws of the state, fixing the aggregate amount of capital at not less than the contract price, divided into shares of one hundred dollars each, according to the laws of the state. Each subscriber hereto shall receive a full paid certificate of the stock of such corporation to the amount of the par value of his subscription hereon, when paid in full and not until then, and the subscribers hereto shall not be liable for any further assessments or payments whatsoever."

It seems that the Hastings Industrial Company had serious doubts as to the financial responsibility of some of the signers, and, as a result of certain negotiations, six of the subscribers (of whom defendant was one) executed and delivered to the Hastings Industrial Company their three promissory notes, dated July 3, 1911, aggregating in all $4,000, to wit, one note for $1,500, payable October 1, 1912; one note for $1,250, payable November 1, 1913; and one note for $1,250, payable November 1, 1914. Thereafter the following assignment was executed and delivered to the six persons who signed the said three promissory notes, to wit:

"Chicago, Ill., Sept. 15, 1911.

"The Hastings Industrial Company of Chicago, Illinois, first party to a gathered cream power butter factory, to be erected at Burnstad, Logan county, North Dakota, hereby assign to Chas. Hernett, H. A. Shepard, Theodore Meyer, J. S. Reich, C. P. Burnstad, and D. L. Anderson all of their interests in said contract with full authority to make collections from all subscribers and use said collections as per contract.

"The Hastings Industrial Company,
"MFM.                                          By John L. Peterson, Secy."

The evidence shows that when the creamery had been constructed and was put into operation, the company had no working capital. A small sum was borrowed from the bank for this purpose. It appears that the treasurer deposited all funds received, both from the sale of

butter and from the payments received from any of the subscribers to the contract with the Hastings Industrial Company, to the account of the creamery company in the bank. Only one account or fund was kept, and as checks were drawn by the secretary or manager for operating expenses, such as the purchase of cream, salaries, or matters of that kind, he (the treasurer) paid them out of such fund. The evidence shows that prior to December 21, 1915, he received payments upon subscriptions aggregating $1,557, which he so deposited. It also appears that of said sum only $431.26 was utilized in paying the Hastings Industrial Company (for which that company allowed credit upon one of the said three notes), and that $1,122.74 of said $1,557 was disbursed in the payment of the operating expenses of the creamery. It also appears from the evidence that after the creamery ceased to operate, to wit, after December 21, 1915, various subscribers paid to Hernett sums aggregating $1,739.36, as payment upon their subscriptions under the said contract with the Hastings Industrial Company. The undisputed evidence also shows that the six persons who signed the notes in favor of the Hastings Industrial Company were afterwards compelled to pay them, so that the Hastings Industrial Company has been paid in full.

After the defendant had interposed his answer, the plaintiff served a demand that defendant furnish an itemized statement or account of receipts and disbursements. The defendant furnished such account, showing the amount of moneys collected and expended by him up to and including December 21, 1915; that is, for the entire period that the creamery was being operated. As already stated, it appears, however, that after that date he collected or received from various subscribers to the contract with the Hastings Industrial Company sums aggregating in all $1,739.36. The evidence adduced by the defendant shows that this latter sum was all applied in payment of the indebtedness due the Hastings Industrial Company, and credit given therefor upon the notes given to that company by said six persons.

The contentions of the plaintiff are:

(1) That in so far as concerns the $1,557 received by the defendant from subscribers, prior to December 21, 1915, he had no right to mingle such moneys with moneys received from other sources, such as the sale of butter; that "the stockholders and creditors of the corporation had a right to expect that the capital stock should be held as a trust fund, or applied in payment of the initial indebtedness or in improvements upon

the creamery plant;" and that "the treasurer having dissipated, misused, and misapplied this fund without the consent of the stockholders or creditors, is now liable upon an accounting to the receiver who represents both." (2) That in so far as concerns the $1,739.36 received by the defendant from subscribers after December 21, 1915, the defendant was precluded from giving evidence as to the disbursements thereof made by him, for the reason that no mention was made of the collection and disbursements of such moneys in the itemized account rendered by the defendant to the plaintiff herein.

In our opinion neither of these contentions are tenable. It will be noted that by the terms of the contract between the Hastings Industrial Company and the subscribers it was expressly agreed that the industrial company was to be paid in all $4,000, and that each one of the signers agreed to pay to the Hastings Industrial Company the amount subscribed, and no more. Each of the different subscribers subscribed $100. By the express terms of the contract the Hastings Industrial Company had "the right to first collect from said subscriptions or notes the entire amount due under" the contract, namely, $4,000; and it was only "money, notes or subscriptions remaining after" the Hastings Industrial Company had "been fully paid" that constituted "the property" of the subscribers.

The evidence shows that all moneys received by Hernett from so-called subscriptions, prior to December 21, 1915, amounted to $1,557, and that subsequent to that date he received similar payments amounting to $1,739.36, making an aggregate of $3,296.36 collected on such subscriptions. The undisputed evidence, however, shows that the six persons who signed the notes in favor of the Hastings Industrial Company have paid such notes in full with interest. Manifestly, if the arrangement had not been made between the Hastings Industrial Company and the six persons who signed the three notes and later paid them, all the moneys paid on the so-called subscriptions would have belonged to the Hastings Industrial Company, and not to the Farmers' Co-operative Company. The Hastings Industrial Company, however, has been paid in full, and has assigned its rights and interests under the contract to the six persons who executed and delivered their notes to it in full for its claim, and later paid such notes. These persons stand in the shoes of the industrial company, Raich et al. v. Lindebak, 36 N. D. 133, 140, 141, 161 N. W. 1026. In other words, the moneys collected upon the so-called subscriptions belonged to the assignees of the Hastings Industrial Company, and not to

the Farmers' Co-operative Company. If any one has any complaint of the way in which these moneys have been disbursed, it is these men, and not the Farmers' Co-operative Company, which corporation confessedly received the benefit of some $1,122.74, belonging to these men. There is no contention that the defendant did not account fully for other moneys received and disbursed by him. And, in our opinion, the trial court was entirely correct in finding that the defendant had fully accounted for all moneys received and disbursed as treasurer of the Farmers' Co-operative Company.

The plaintiff contends that the defendant is estopped from claiming that the moneys received by him on subscriptions belonged to the six persons who signed and paid the notes to the Hastings Industrial Company, for the reason that these persons have presented claims to the receiver, which claims, it is asserted, in part, are for moneys paid by such persons to the Hastings Industrial Company. In our opinion this contention is without merit. There is no contention that the claims presented are for anything except what these persons were required to pay to the Hastings Industrial Company in excess of what was received from the subscribers. There is nothing to indicate that any action has been taken thereon by the receiver whatsoever, and manifestly he has in no manner been prejudiced by the presentation of the claims. It appears from the evidence that the very moneys involved in this controversy had all been received by the defendant and disbursed long before the claims were presented to the receiver And the claims were prepared on the theory that the moneys received by the defendant from the subscribers had all been received and disbursed by him, as the evidence in this case shows them to have been received and disbursed. As already indicated, it does not appear whether the claims have been allowed or disallowed. The presumption, of course, is that such action, and such action only, has been, or will be, taken, with respect thereto, as the law and facts warrant. The judgment appealed from is affirmed.

ROBINSON, BIRDZELL and BRONSON, JJ., concur.

GRACE, C. J., concurs in the result.